UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| DILIO ANTONIO ESCARRIA-MONTANO, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 10-1389 (RWR) |
| UNITED STATES OF AMERICA, | ) ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM OPINION

Plaintiff, proceeding *pro se*, is a federal prisoner at the Federal Correctional Institution in Big Spring, Texas. He sues under the Torture Victim Protection Act of 1991 ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (codified at 28 U.S.C. § 1350, note[1]), and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for injunctive relief and monetary damages.[2] By Order of August 18, 2010, the *Bivens* claim was dismissed pursuant to the screening provisions of 28 U.S.C. § 1915A for failure to state a claim, but the TVPA claim was allowed to proceed against the United States. *See* Mem. Op. and Order [Dkt. # 4]. The United States now moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of

---

[1] *See* Historical and Statutory Notes, Sec. 1. Short Title.

[2] Plaintiff also invokes 18 U.S.C. § 2340(2)(A), but that provision is part of a federal criminal statute that states that "[n]othing in this chapter shall be construed as . . . creating any substantive or procedural right enforceable by law by any party in any civil proceeding." 18 U.S.C. § 2340B.

subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Because plaintiff has not shown that he exhausted his administrative remedies under either the TVPA or the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, the motion to dismiss under Rule12(b)(1) will be granted.

BACKGROUND

Plaintiff is a Columbian national who pled guilty under a plea agreement to conspiracy to possess with intent to distribute cocaine while on board a vessel and is serving a sentence of 168 months. *U.S. v. Escarria-Montano*, No. 8:06-cr-499-T-23TGW, 2010 WL 3927677, at *1 (M.D. Fla. Oct. 4, 2010). The instant complaint arises from plaintiff's alleged injuries sustained during an encounter on November 29, 2006, between a Panamanian fishing vessel that he was on and a United States vessel, which resulted in his arrest. The facts as recounted by the court presiding over plaintiff's collateral proceeding under 28 U.S.C. § 2255 are as follows:

> On or about November 29, 2006, the defendant along with seven other coconspirator crew members, all Colombian nationals, were traveling in the Eastern Pacific on the fishing vessel the Mary Valencia. The crew of the Mary Valencia had departed the coast of Colombia carrying a cargo of 108 bales of cocaine. They were spotted approximately 240 nautical miles from the nearest land mass, the Malpelo Island, in international waters. The Mary Valencia was flying under a Panamanian flag and had markings of registration on it. The Panamanian Government was contacted to verify registration. The Panamanian Government confirmed Panamanian registration of the vessel and granted authority to board and search the Mary Valencia. The Colombian Government was also contacted when the crew asserted Colombian citizenship. The Colombian Government authorized jurisdiction over the prosecution of 6 out of the 8 crew members, to include the defendant.
> On November 29, 2006, a Helo team launched from the USS Thatch spotted the Mary Valencia during a routine patrol of the Eastern Pacific. The Mary Valencia changed it's [sic] course in an effort to elude the Helo team's efforts to hail her. The USS Thatch then proceeded to intercept the Mary Valencia.
> As the USS Thatch approached the Mary Valencia it went dead in the water and the crew members were observed attempting to scuttle the vessel by setting it on fire. As a result there was a violent explosion that resulted in the severe injuries of several of the crew members. The crew members jumped into the water and were

2

> rescued by a USS Coast Guard Boarding Team dispatched from the USS Thatch for the purpose of rendering assistance to the crew members in the water. Once they accounted for all of the crew members in the water, the Coast Guard Boarding Team boarded the Mary Valencia to search for other crew members who may have been injured and still on the boat and to assess the damage.
>
> A search of the vessel revealed that the crew had attempted to set the boat on fire by stuffing the fuel tank with fuel soaked rags and pouring gasoline on the deck of the boat. A further search revealed a hidden compartment on the Mary Valencia in which was found 108 bales of a substance that tested positive for cocaine.
>
> The Defendant's presence on the vessel was part of an unlawful agreement with others to possess with intent to distribute five (5) or more kilograms of cocaine. The Mary Valencia was seized with approximately 2700 kilos of cocaine on board and the Defendant and 5 co-conspirators were taken into custody by the Coast Guard with the Middle District of Florida being the place at which the defendant and co-defendants entered the United States. The other two crew men most severely injured in the explosion were returned to Colombia for treatment and prosecution.

*Escarria-Montano*, 2010 WL 3927677, at *1. In this action, plaintiff alleges that he suffered first, second and third degree burns on various parts of his body from the explosion, Compl. ¶ 14, and that he was unconscious for three days and hospitalized for 15 days. *Id*. at ¶¶ 18-19. He advances the following causes of action: "Misuse of Force," *id*. at 7-8; "Denial of Due Process," *id*. at 9-10; and "Denial of Medical Care," *id*. at 12.[3] In addition to declaratory and injunctive relief, plaintiff seeks $1.9 million in compensatory damages and more than $1.2 million in punitive damages. *Id*. at 19.

## DISCUSSION

Defendant argues that plaintiff's claim is barred by sovereign immunity. The United States, as sovereign, is immune from suit absent its explicit consent to be sued. *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981); *Kugel v. United States*, 947 F.2d 1504, 1506 (D.C. Cir.

---

[3] The 21-page complaint and its various attachments are far from clear. To add to the confusion, the complaint contains two sets of page numbers. Where necessary, plaintiff's page numbers appearing at the top right-hand corner of the 21-page complaint are cited.

1991).  A waiver of "sovereign immunity must be unequivocally expressed in statutory text" and will be "strictly construed, in terms of its scope, in favor of the sovereign."  *El-Shifa Pharm. Indus. Co. v. United States*, 402 F. Supp. 2d 267, 270 (D.D.C. 2005) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)).

Section 1350 of Title 28 of the United States Code ("Alien's action for tort") vests in the district court "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  However, that statute, commonly referred to as the Alien Tort Claims Act ("ATCA") or the Alien Tort Statute ("ATS"), has been interpreted as "strictly jurisdictional [in] nature"; it does not itself "create a statutory cause of action."  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 713 (2004).  Section 1350 is "intended as jurisdictional in the sense of addressing the power of the courts to entertain cases concerned with a certain subject."  *Id.*, 542 U.S. at 714; *see id.* at 720 (explaining "that Congress intended [§ 1350] to furnish jurisdiction for a relatively modest set of actions alleging violations of the law of nations."); *Arias v. Dyncorp*, 517 F. Supp. 2d 221, 227 (D.D.C. 2007) ("It is clear that the ATCA may be used against corporations acting under 'color of [state] law,' or for a handful of private acts, such as piracy and slave trading.") (citations omitted).

Torture is a subject the courts are authorized to address under § 1350, inasmuch as the TVPA creates a cause of action against an individual who subjects another to torture or "extrajudicial killing" while acting "under actual or apparent authority, or color of law, of any foreign nation[.]"  28 U.S.C. § 1350, note § 2(a); *see Ali Shafi v. Palestinian Auth'y*, 686 F. Supp. 2d 23, 26 (D.D.C. 2010), *aff'd*, No. 10-7024, 2011 WL 2315028 (D.C. Cir. June 14, 2011) ("Torture is one of the rare situations in which courts have recognized a common law cause of

action under the ATS.") (citation omitted). Unlike the FTCA, under which the United States has consented to be sued for certain offenses but not others, neither the TVPA nor the ATCA contains language authorizing a lawsuit against the United States. *See Al-Zahrani v. Rumsfield*, 684 F. Supp. 2d 103, 113 (D.D.C. 2010) (agreeing with government's certification under *Westfall* Act (28 U.S.C. § 2679(d)) that "plaintiffs cannot sue any of the individual[] [federal employees] under the ATCA and that plaintiffs' sole remedy lies against the government under the FTCA"); *Bieregu v. Ashcroft*, 259 F. Supp. 2d 342, 354 (D.N.J. 2003) ("[W]ith respect to Plaintiff's claims against Defendants in their official capacities, all courts that have addressed the issue agree that the ATCA does not itself waive the sovereign immunity of the United States.") (citing cases); *see also Ali Shafi*, 686 F. Supp. 2d at 28 ("Defendants correctly assert that Ali may not plead a cause of action against non-natural persons under the TVPA."). But even if this lawsuit is maintainable under the TVPA, *see Arias*, 517 F. Supp. 2d at 226-27 (resolving merits of TVPA claim in favor of U.S. contractor), the TVPA, like the FTCA, requires the exhaustion of administrative remedies prior to judicial review. *See* 28 U.S.C. § 1350, note § 2(b) ("A court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred.").

Plaintiff has not shown that he has exhausted his administrative remedies, and the exhaustion requirement is jurisdictional. *See Mohammed v. Rumsfield*, No. 07-5178, 2011 WL 2462851, at *7 (D.C. Cir. June 21, 2011) (concluding that "[t]he district court [] properly dismissed the [unexhausted] ATS claims under FRCP 12(b)(1) for lack of subject matter

jurisdiction.").[4]  Therefore, in the absence of subject matter jurisdiction, defendant's motion to dismiss under Rule 12(b)(1) will be granted.

CONCLUSION

Because subject matter jurisdiction over this action is lacking, the complaint will be dismissed. A separate Order accompanies this Memorandum Opinion.

DATE: July 12, 2011

_____/s/_____
RICHARD W. ROBERTS
United States District Judge

---

[4] Even if exhaustion has occurred, dismissal would be appropriate under Rule 12(b)(6) because the facts do not support a finding of torture as defined by 28 U.S.C. § 1350, note, § 3(b); *see Arias v. Dyncorp*, 517 F. Supp. 2d 221, 226 (D.D.C. 2007) (discussing definition). Plaintiff's alleged injuries resulted from the explosion set by his fellow crew members. *U.S. v. Escarria-Montano*, 2010 WL 3927677, at *1. "An act of torture would not include 'the unforeseen or unavoidable incident of some legitimate end[,]' " *Arias*, 517 F. Supp. 2d at 226 (citation omitted), and the facts do not establish that plaintiff was "in defendant[']s custody or physical control" when he was injured. *Id*. Furthermore, among the attachments to plaintiff's complaint is an Order of United States Magistrate Judge Philip R. Lane of the Northern District of Texas, dismissing plaintiff's case -- including a claim under § 1350 arising from the same set of facts presented here -- as frivolous. Compl. Attach. D. Therefore, the current claim, having been previously adjudicated on the merits, is also subject to dismissal as procedurally barred under either the doctrine of res judicata or that of collateral estoppel.